Per Curiam.
The plaintiff sues as the assignee of a policy of insurance made by defendants insuring one Jensen, the assignor, “ against bodily injuries effected through external, violent and accidental means.”
For a reversal it is urged that the testimony incontrovertibly proved that Jensen’s death resulted from his own negligence. The policy provided that “ the member is requested to use all due diligence for personal protection.”
The death of Jensen was caused by his being run down by a steam locomotive and its train. The train was moving upon a track, close to the platform of a station. This track was designated on the trial as No 1. South of that track, at a short distance from it, and about parallel to it, was another track called No. 2, and again another track, parallel, desig *162 nated as No. 3. And still to the south were several other tracks.
It may be assumed that Jensen approached the place, from the outside of all these tracks, from the south. Whether it was a negligent act to approach in this way and to cross until he reached track No. 3, is not material in this case, for the testimony shows that, in fact, he was in no danger from the approaching train until he reached track No. 3, as the jury might find.
The jury iñight find under the evidence, that when he reached track No. 3, he could not see the approaching train if he had looked, as there were cars standing upon that track. If he proceeded to track No. 2, and crossed it without looking for a train, and thereR were no other facts for a jury to find whether he was excusable for not looking and for going on, the court perhaps might hold that his negligence caused the accident in part. But there were other occurrences which made up the circumstances in view of which it was to be determined whether the deceased was negligent.
As he was upon track No. 3, Downey, an employee of the railroad, as he was on the platform,, saw Jensen coming towards the platform. The train that afterwards struck Jensen was coming towards the platform at great speed, and Downey called out in a loud tone, “ look out for the express,” Jensen was then thirty feet away and might have heard. Simultaneously another employee shouted to Jensen from one side. It might have been found that also another em-. ployee was then calling to Jensen from behind him.' Forthwith Jensen, who had been walking rapidly or was upon a half trot, took a still faster pace, crossed track No. 2, and, as he was crossing the next track, was struck.
The jury, in finding what course would be taken by a prudent man, would be obliged to ascertain what *163 would be the effect upon such a man of the calls to him, under the circumstances, and whether their meaning to him would be to stop where he was or to proceed at a fast rate, and that then he would be safer. It is to be noticed that Jensen was not told to stop; that the directions to him may have been confusing, as some came from one side of him and others, the jury might find, came from a track over which he had passed. On the whole, a jury might believe that a man of ordinary prudence and apprehension would be led to believe that it was a safe course to hurry and get to the platform as quickly as he could. It was for the jury to find whether, in taking that course, it was imprudent not to stop at track No. 2, and look for the train.
There was sufficient testimony to call for a verdict of the jury on the question of whether the death resulted from the negligence of the insured. By the policy the company were not to be liable if the death resulted “ from voluntary exposure to unnecessary danger.” The appellant argues that the testimony disclosed a breach of this condition by the deceased. At this point attention will be given only to the term voluntary. If there was not a voluntary exposure, there was not a breach. The word, of course, in some way refers to the action of the will. Used as it is in the policy by an insurance company to be understood by men of ordinary information and intelligence, it does not involve the opposing views of philosophers as to free will or determination. But by all it is considered that the will acts from motives springing from things external to the will, and that such motives have an influence more or less controlling upon the will and tending to induce. it to act in a certain way.
In common apprehension, in respect to the ordinary transactions of life, if the external circumstances would have such a controlling influence upon a man of ordi *164 nary prudence and intelligence, that he would take a certain course, that course would not be considered voluntary on his part. His course would not be freely taken. It would be controlled by external circumstances.
In this case, it was a question of fact for the jury as to the extent to which Jensen was influenced or controlled by the external circumstances. And the jury would be bound to find that his act was not voluntary if it was such as a man of ordinary prudence would be induced to do by the circumstances.
It is further maintained for the appellant that the injury was not “ accidental.” The meaning of this word, however, seems to be, not brought about by the purpose or intention of the insured. This was at least for the jury to pass upon.
■ The policy excepts the hazard “ of standing or walking on the roadbed or bridge of any railway.” This does not include such a crossing of the track as the deceased made. To stand or to walk on a roadbed implies some sensible duration of the act, and does not describe a mere crossing made for a justifiable purpose, such as reaching the station. Common language distinguishes between standing, walking, and crossing.
On the trial the following questions were asked and answered, under exception by defendants. Q. Has it been the custom, to your knowledge, for people to reach the station in Stanford by other routes than going by the regular roadway ? Q. Do you know whether there was a general custom at this time for people to cross those tracks from Collender’s billiard factory to the station ? These questions were pro-, perly allowed. They tended to draw out matter relevant to the defence in the answer, under a clause of the policy that Jensen was killed “ while, or in consequence of, violating the law or the rules of a company, etc.” This supposed violation was crossing the tracks.
*165 It was some evidence of the rule or regulations of the company that the tracks had been used for crossing by people generally.
The court did not charge erroneously “ that if the jury find that plaintiff’s assignor was passing the crossing in question upon an express or implied invitation or inducement of the railroad company, or by its permission he was rightfully there.” It is apparent from the rest of the charge that this meant, and was understood to mean, rightfully, as regarded the railroad company. It was involved in the facts to be passed upon by the jury to consider whether Jensen was a trespasser, among other things, as bearing upon his conduct.
There was an exception to the charge that plaintiff’s assignor, in crossing the tracks when he did, was not a trespasser, and the plaintiff has a right to recover if the injury complained of was not caused by want of' ordinary care. The evidence established the fact that Jensen was not a trespasser. The remainder of this part of the charge, if considered with the rest of the charge, was not injurious to the appellant, even if it be, when taken by itself, not correct.
The court was correct in charging, that to establish the defence that Jensen met his death “ by voluntary exposure to unnecessary danger the jury must find that the act of so exposing himself was known or ought to have been known to him, and that his crossing the track was done voluntarily with the full knowledge of the danger.” There seems to be some word inadvertently omitted from the charge as printr ed in the case. The charge means, that to sustain the defence the deceased must have known or ought to have known the danger, and that his act was voluntary and with the knowledge of the danger that he had or ought to have had. The deceased did not voluntarily expose himself to danger if he did not *166 know, or was not bound to know, the existence of that danger.
The court was asked to charge, that if Jensen heedlessly and unnecessarily exposed himself to danger of injury, the plaintiff could not recover. The court was not called upon to charge in these words. It had held, for the purpose of the charge, that the act of Jensen was voluntary, and had explained that to be voluntary exposure, Jensen must know or should have known that the danger was present.
The court was right in refusing to charge tha.t Jensen was bound to exercise more than ordinary care, holding that the care should have been such as a prudent man would have used under the sa,me circumstances. -
Judgment and order affirmed, with costs.